412 A.2d 552

**Maria OLSHANSKY, Tax Collector Candidate, Whitpain Township, et al., Appellants,**

**v.**

**MONTGOMERY COUNTY ELECTION BOARD, Charles E. Cannon, Candidate for Tax Collector, Whitpain Township, Whitpain Township Republican Campaign Committee, and Charles Lewis, Chairman, Appellees.**

Supreme Court of Pennsylvania.

Argued Jan. 21, 1980.

Decided March 20, 1980.

366

Lawrence Alexander, Harrisburg, for appellants.

Marc B. Kaplin, Philadelphia, for appellees.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION

LARSEN, Justice.

A general election, including the office of tax collector of Whitpain Township, was held on November 6, 1979. On November 19, 1979, in the Court of Common Pleas of Montgomery County, Civil Division, a petition to contest the election was filed by the defeated tax-collector candidate Maria Olshansky and certain named registered electors (hereinafter called appellants) against the winning tax-collector Charles Cannon, the Montgomery County Election Board, the Whitpain Township Republican Campaign Committee and its Chairman, Charles Lewis (hereinafter called appellees). A $1,000 bond was filed by appellants on November 21, 1979. In preliminary objections, appellees alleged that appellants' bond was improper and therefore requested the lower court to dismiss appellants' petition to contest the election. By order dated January 2, 1980, the lower court dismissed appellants' petition on the grounds that appellants' bond had failed to comply with the Election Code's bonding provision, Act of June 3, 1937, P.L. 1333, art. XVII, § 1759, *as affected,* 25 P.S. § 3459 (Supp.1979–80).[1] Appellants appealed the dismissal of their petition to contest the election directly to this Court.

Appellants first contend that the bond which they filed was not so substantially or materially defective as to warrant dismissal by the lower court for failure to satisfy the Election Code's bonding provision. This provision provides:

[1] For the very same reason, the lower court's order of January 2, 1980, also dismissed appellants' amended petition filed on December 4, 1979.

Whenever a petition to . . . contest election of any class shall be presented . . . to the court, it shall be the duty of said petitioners, within five days thereafter, to file a bond, signed by at least five of the said petitioners in such sum as the . . . said court shall designate, with two or more individual sureties of a corporate surety to be approved by the . . . court or judge, conditioned for the payment of all costs which may accrue in said contested . . . election proceeding, in case the said petitioners by decree shall be adjudged liable to pay said costs, *and if the said bond shall not be filed, as herein provided, the said petition to contest the . . . election shall be dismissed.* (emphasis supplied).

■ In light of the express language of this provision, appellants' contention lacks all merit for, as the record unambiguously demonstrates and as the lower court set forth in its thorough opinion, appellants' bond deviated from the Election Code's requirements in the following significant respects:

(1) said bond was not signed by at least five petitioners, in fact it was not signed by *any* of the petitioners; (2) the amount of the bond was not designated by the court, in fact no request was made to any judge to designate a bond in any amount (3) the corporate surety was not approved by the court, nor was such approval ever sought; and (4) said bond was not conditioned for the payment of all costs which may accrue in the contested election proceeding. (Opinion of lower court at 9).

Such deficiencies are clearly sufficient to warrant dismissal of the petition to contest the election since, as the facial language of the Election Code's bonding provision explicitly mandates, "if the said bond shall not be filed, *as herein provided,* the said petition to contest the election *shall be* dismissed." [2] (emphasis supplied). Furthermore, this

2. This Court has affirmed dismissals of petitions to contest an election where only single defects were present in the bonds. *See McChesney's Contested Election,* 326 Pa. 438, 192 A. 415 (1937) (petition was dismissed where petitioner signed bond as surety even though his suretyship was surplusage); *Burns's Contested Election,*

Court's decisional law has long held to the principle that the filing of a bond in substantial conformity with the Election Code's bonding provision is also a condition of the lower court's jurisdiction to hear and adjudicate the contest. *Moritz's Contested Election*, 256 Pa. 537, 100 A. 1033 (1917). For these reasons, the lower court did not err in dismissing appellants' petition.

■ Appellants' second contention is that the petition should be upheld on the grounds of public policy and the public interest. Specifically, appellants maintain that an election should not remain "shrouded in a cloud of doubt" thereby eroding the public's confidence in the elective franchise. The legislature of this Commonwealth likewise shares appellants' concern for protecting the elective franchise from erosion and debilitation. By requiring full compliance with the statutory bonding requirements—assuring, thereby, the filing of a proper, timely and sufficient bond—the legislature has protected the elective franchise from dilatory and costly disruptions which would gravely injure the elective process. Thus our holding here, in fact, enhances the elective franchise and challenges associated therewith by requiring adherence to the law by all the contestants.

■ Appellants' third contention is that the inadequate bond which they filed is authorized by a *general* bonding provision found in the "Statutory Construction Act of 1972," Act of November 25, 1970, P.L. 707, No. 230, added December 6, 1972, P.L. 1339, No. 290 § 3 (1978 Appendix to 1 Pa.C.S.A. § 1906). This general bonding provision provides:

> A statute requiring a bond or undertaking with sureties to be given by any person shall be construed to permit in lieu thereof a bond of indemnity or surety bond for the

315 Pa. 23, 171 A. 888 (1934) (petition was dismissed where no seal intended on the bond); *Knoxville School District Election,* 274 Pa. 354, 118 A. 307 (1922) (petition was dismissed where bond defective because proper number of sureties failed to sign said bond); *Moritz's Contested Election,* 256 Pa. 537, 100 A. 1033 (1917) (an unsealed bond is defective and required dismissal of petition). *A fortiori,* where cumulative defects are present in the bond, as in the instant case, dismissal is clearly warranted.

amount of such bond or undertaking, given by any indemnity or surety company authorized to do business in this Commonwealth, and approved by the proper authority. Appellants argue that this *general* bonding provision offers an alternative to the *specific* bonding provision of the Election Code. Appellant's argument is without merit. A well-known rule of statutory construction, Statutory Construction Act of 1972, Act of November 25, 1970, P.L. 707, No. 230, added December 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa.C.S.A. § 1933, provides that when a general provision in a statute shall be in irreconcilable conflict with a special provision in the same or another statute, "the special provisions shall prevail and shall be construed as an exception to the general provision, . . .." Application of this rule makes it patently clear that the Election Code's specific bonding provision is controlling. To construe matters otherwise would result in a total emasculation of the express requirements of the bonding provision of the Election Code. The legislature could not have intended such an anomalous result.[3]

For the reasons set forth above, the order of the lower court dated January 2, 1980 dismissing appellants' petition to contest the election is affirmed.

EAGEN, C. J., concurs in the result.

ROBERTS, J., filed a dissenting opinion in which NIX, J., joined.

ROBERTS, Justice, dissenting.

At the November, 1979 general election, the initial count of votes for candidates running for the office of tax collector of Whitpain Township, Montgomery County, gave appellant Maria Olshansky 1483 votes, and respondent Charles Cannon

---

3. Appellants would additionally have us reach an issue going to the merits of their election challenge, namely, whether the lower court has inherent power to examine violations of a criminal nature and whether it has power to impose criminal penalties for an alleged violation of an election law governing political advertisements. Because appellants' case fails for want of an appropriate bond, we do not reach this issue.

1480. One week after the first vote, at a "complete and final recanvas," an "unsealed master envelope" from one of the Township's voting districts was opened and "found" to contain five yet-uncounted absentee ballots. Four absentee votes were for Cannon, one was for Olshansky, thus tying the vote at 1484 for each candidate. The next day, after the "complete and final recanvas," another "mystery ballot" was found in a previously-opened, "official absentee ballot" envelope. This absentee ballot reflected a vote for Cannon, making him the winner over Olshansky by one vote.

Olshansky and other named registered voters of Whitpain Township then filed a petition to contest the election. Two days after the petition was filed, a $1,000 bond was filed naming Olshansky as principal and the United States Fidelity and Guaranty Company as surety. The bond both identified the parties involved and fully covered conditions of Olshansky's obligations. Attorneys for both Olshansky and the corporate surety signed the petition.

The court of common pleas, however, never reached the merits. Instead, on the preliminary objections of Cannon and other respondents, the court of common pleas dismissed the petition on the ground that the bond did not strictly comply with section 1759 of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, 25 P.S. § 3459 (1963).

Today, relying on the same out-dated cases of this Court upon which the court of common pleas relied, which admit to make the bond requirement turn not on the "sufficiency of the security" but rather on whether there is "literal compliance with the terms of the Act of Assembly," *Mayo's Appeal*, 315 Pa. 269, 273, 172 A. 848, 850 (1934), the plurality affirms the court of common pleas' dismissal. I must dissent. The plurality's steadfast adherence to archaic cases overlooks both more recent, more sensible cases of this Court, as well as express legislative directions not to limit the bond requirement.

This Court's unanimous decision in *Birmingham Township Election Case*, 393 Pa. 396, 143 A.2d 18 (1958), makes it obvious that the old cases upon which the plurality relies are

no longer to be followed in a contest such as this. As this Court stated in *Birmingham,*

"An election contest is a method to insure the honesty and validity of elections. While the statutory requirements must be followed, mere technicalities should never thwart the inherent and basic purpose of a proceeding to test the validity of an election."

393 Pa. at 401, 143 A.2d at 20. See also 1 Pa.C.S. §§ 1928(b) and (c); *Miller Election Case,* 351 Pa. 469, 41 A.2d 661 (1945). In my view, *Birmingham* properly interred this Court's earlier overly-technical demand that each provision of the Election Code's bond requirement be strictly followed. In harmony with the principle embodied in *Birmingham,* I would hold here that the bond of $1,000 filed by Olshansky as principal and by a corporate surety, properly signed, fully identifying the parties, and correctly conditioning the petitioner's obligations, meets the bond requirement of the Election Code.

Apart from *Birmingham,* relevant provisions of our Legislature's Statutory Construction Act compel the conclusion that here a proper bond was filed. First in 1937 and again in 1970, our Legislature made it very clear that the bond requirements of specific acts may be satisfied by alternate means. Under 1 Pa.C.S. § 1906,

"A statute requiring a bond or undertaking with sureties to be given by any person shall be construed to permit in lieu thereof a bond of indemnity or surety bond for the amount of such bond or undertaking, given by any indemnity or surety company authorized to do business in this Commonwealth, and approved by the proper authority."

See Act of May 28, 1937, P.L. 1019, § 36, formerly 46 P.S. § 536 (1969) (containing virtually identical language). It must be obvious that the bond filed here amply satisfies this alternative means of compliance.

The plurality's reliance on a "well-known rule of statutory construction," 1 Pa.C.S. § 1933, to support its contrary conclusion cannot go unmentioned. Concluding that the alternative bond provision of 1 Pa.C.S. § 1906 and the

bonding provision of the Election Code are in "conflict" (a conclusion I do not share), the plurality "resolves" this "conflict" by stating that under the language of 1 Pa.C.S. § 1933 " 'the special provisions shall prevail and shall be construed as an exception to the general provision, . ..' " At 554. The plurality fails, however, to quote additional language of section 1933. Beginning where the plurality ends its quotation, section 1933 goes on to provide:

> "unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail."

If the plurality sincerely believes the relevant statutes hopelessly are in conflict, it must at least address this remaining portion of 1 Pa.C.S. § 1933, for, as appellants point out, 1 Pa.C.S. § 1906 is the later enactment. Surely it cannot fail to address appellant's argument merely by completely ignoring the relevant statutory language.

I dissent, would reverse the order of the court of common pleas, and would remand for proceedings on the merits consistent with this opinion.

NIX, J., joins this dissenting opinion.